The opinion of the Court was delivered by
Ward law, Ch.
The liability of the estate of the trustee for his breach of trust, is so thoroughly discussed in the circuit decree, that this Court deems it necessary to add little on that point beyond its approval of the conclusion attained by the Chancellor. This conclusion is assailed by the defendants on the ground that the liability of the trustee did not arise because he did not receive the moneys of the trust estate, and that the husband was really the trustee for transferring the funds to Mr-Fraser. It is the usual course of Courts of Equity to charge *241 trustees and their representatives with the consequences of a breach of trust, whether they derive benefit from the breach of trust or not; as where one of two trustees receives no money, but by concurring in an act which enables the other trustee to receive, makes himself liable for the others devastavit. Adair v. Shaw, 1 Sch. & Lef. 272. Thus in Kinloch v. Ion, 1 Hill, Ch., 190, a trustee who lived remotely from the trust estate, and had not otherwise intermeddled in the trusts, except by joining the other trustee and the husband in a conveyance of the land held in trust, and thereby contributing to put the proceeds of sale in the power of the husband, was made responsible for the husband’s waste of the fund. In Kinloch v. Ion, the original trust estate was a sum of money advanced by the father of the wife to the husband, and by the marriage contract it was made the duty of the husband to invest the money in property to be held by the trustees on the trusts declared in the contract; and of course no liability attached to the trustees until such investment had been made by the husband. But in the present case no such trust or confidence is reposed in the husband. The articles here contain no intimation that the husband was to exercise any discretion concerning the trust estate. Edward Thomas and Mary E. Walker covenanted with the trustee, that, in case of their intermarriage, they would convey and assure to the trustee in fee all her estate, particularly her undivided share of the estate of her late husband L. Gr. Walker, “as soon after said estate is divided as may be practicable,” in trust, for the joint use of said Edward and Mary during their joint life, then for the use of the survivor for life, and on the death of the survivor for the use of the heirs of the body of the said Mary, living at the date of the articles, and of the heirs of her body to be begotten by the said Edward. The husband was merely under a legal liability by covenant; and the trustee by accepting the covenant came under the trust and obligation to enforce the liability and duty thereby created. It is one of the chief ends of mar *242 riage contracts to interpose a responsible person in the character of trustee in the place and for the protection of the wife, who is necessarily under the disability of coverture, and of the children, who may be under the disability of infancy, against the rights and interference of the husband: and we should not make a construction defeating this end, where it is not required by the text or context. The Chancellor after reviewing the facts, says, it is inconceivable that the trustee should have been in ignorance of the proceedings in partition in 1886-7, by which the estate of L. Gr. Walker was distributed, and under the operation of which the thirds of Mrs. Thomas, as widow of Walker, passed into her husband’s hands and were ultimately wasted. Yet the 'trustee did not interpose for his beneficiaries during the pendency of these procedings, nor at any time before his death in 1849; and he must be held to have suffered the husband to receive the trust funds, and to have acquiesced in his abuse of the trust. When the trustee accepted the trust by joining in the execution of the articles, he incurred the obligation of discharging actively the duties of his office; and his withdrawing from all participation in the affairs of the trust, so far from affording any excuse to him, was in itself a breach of trust.
The Chancellor, however, although he asserted clearly and strongly the doctrines of the Court as to the liability of trustees, refrained from final judgment in this case, and directed the plaintiffs to amend their bill by charging specifically the acts of default or neglect by the trustee on which they relied to make his estate liable, and gave leave to the defendants to defend themselves further against the bill when amended. The plaintiffs appeal because final judgment was not pronounced; and we are of opinion, the Chancellor concurring, that the appeal ia well taken. In the stating part of the bill, the plaintiffs, after setting forth the proceedings for the partition of L. Gr. Walker’s estate, allege that the share of their mother, consisting of ten or eleven thousand dollars in money and *243 clioses, “went either into the hands of the said Eraser as trustee, or into the hands of his agent or agents acting under his authority;” and part of the prayer of the bill is that an account may be taken of the share of plaintiff’s mother, “ which was received by the said Peter W. Eraser, as trustee, under said marriage settlement, or but for the wilful neglect or default of the said Eraser might have been received by him, or by any other person or persons acting under his authority.” It is clear on the evidence that the trustee did not receive the share of the mother of plaintiffs by himself or any regularly appointed agent, and perhaps it would be straining too hardly even against a negligent trustee to affirm that mere non-feasance on his part, should be held to imply sufficiently that he authorized the receipt of the money by the person who did receive. Yet the great purpose of strictness in pleading is to prevent surprise on the opposite party by any variance between the allegations and proofs; and here the prayer of the bill, at least not inconsistent with the stating part, gave distinct notice to the defendants that the estate of the trustee would be pursued for the negligence or default of the trustee in not receiving the money. The defendants complained of no surprise, and made no objection to the evidence for departure from the allegations. Objection on the score of such variance should be promptly taken when the evidence is offered, or it will be considered as waived. Hatcher v. Hatcher, McMul. Eq. 311. In this Court while we endeavor to discourage laxity of proceedure, we also discourage prolixity and delay, and seldom permit ourselves to be embarrassed by mere technicalities in achieving the right of the cause. In our opinion the bill in this case, although not very'exact, states adequately the grounds on which relief may be granted. ,
Again, the Chancellor was reluctant to proceed to final judgment from some doubt whether the defendants might not defend themselves against some of the plaintiffs on the ground of the staleness of the claim. Until the death of Mrs. Thomas in *244 1886, it could not be ascertained wbo were the heirs of her body entitled to take in remainder under the trusts of the articles.- The trustee died in 1849; Edward Thomas, the surviving life tenant, died in 1851, when the right of the plaintiffs to enjoyment accrued; and the bill was filed in July, 1852.— When the bill was filed, the oldest child of Mrs. Thomas had been of mature age about seven years; the next child, who died shortly before the filing the bill, and the representative of whom is a plaintiff, would if living have been about twenty-six years of age; and the two other children, who are plaintiffs, were infants. It is clear that none of the plaintiffs could be affected by the Statute of Limitations, or the lapse of time, while they were under this disability of infancy; and the time which has elapsed since the oldest attained full age is insufficient to make his claim stale. In a contest between tenant for life and remainderman on one side, and on the other a third' person claiming adversely to the successive rights of both, it may be that such adverse right might be so matured by lapse of time as to inhibit relief by a Court of Equity. Cholmondely vs. Clinton, 2 Jac. and Wal. 1; Price vs. Copner, 1 Sim. and Stu. 347; Harrison vs. Hollins, 1 Sim. and Stu. 471; Foster vs. Blake, 4 Bligh, 140. But in a contest between remainderman and tenant for life, where the tenant for. life is to do some act to accrue for the benefit of the remainderman at the death of the tenant for life, I incline to the opinion that the remainderman is not bound to inquire until the death of the tenant for life whether the act has been done; and that, as Sir Edward Sugden argues in Bennett vs. Colley, 4 Sim. 181, he may wait until the death of the tenant for life, although he may, if he pleases, have his remedy sooner. In the case last cited, a testator bequeathed "a church lease for twenty-one years, renewable of course at the end of every term of seven years, to A, for life, with remainder to his first and other sons; and directed the lease to be continually renewed by the persons in possession for the time being. A. neglected to renew in *245 UT84 and died in 1830. His eldest son attained twenty-one in 7800, and in 1831 filed Ms bill to be compensated for the loss of the lease out of A’s assets; and it was field that fie was entitled to tfie relief notwithstanding tfie lapse of time. Sir Lancelot Sfiadwell in giving judgment says, in substance, that although there was incipient damage to tfie remainderman in 1784, and there was prospective damage during the whole lifetime of tfie tenant for life, yet that the ultimate damage against which a Court of Equity would be finally called upon to relieve would not happen until the death of the tenant for life, and that although preventive relief might be afforded sooner, the full measure of justice could not be ascertained until the right of the remainderman accrued in possession.
The present case is much stronger than the case of Bennett vs. Colley. Here, in the case of the plaintiff whose.neglect to sue is the grossest, seven years, only, expired before suit after he became sui juris, and this is quite too brief an era to raise the presumption of his acquiesence in- the breach of trust; and as the trust in question is a technical and express trust, the Statute of Limitations has no application. It is conceded, that if the trustee had received the moneys which were the proceeds of the mother’s share, and had failed to invest them properly, he as an express trustee could not protect himself by the Statute; but it is supposed that his failure to receive the moneys presents a case different in principle from his failure after re" ceipt to make the proper investment. I do not comprehend this distinction. The nature of this breach of trust, where the breach is inferred from negligence, cannot change the nature of his trust. If he had done any act which purported to be a full execution of his trust, and which his beneficiaries were bound to notice, the statute would run in his behalf from the date of such act; but that state of things is foreign to the case. His breach of trust consists in mere non-feasance — his failure to require from the husband an assurance of the wife’s interest as soon as practicable after her share was separated *246 from those of her tenants in common, to he enjoyed in severalty. What was the date of the practicability of a conveyance after a division was effected, is utterly indeterminate; and the statute must begin to run from some definite day. During the whole life time of the surviving tenant for life, the remainderman might reasonably forbear from suit on the belief, either that a conveyance had been made to the trustee, or that the practicable epoch for the conveyance had not arrived in the opinion of the trustee.
The case of Cooper vs. Day, 1 Rich. Eq. 28, cited in the Circuit decree, holds that remaindermen, whose interests are vested, are entitled, in the life time of the tenant for life, to file a bill to have the trusts in their favor declared, and to have the trustee removed if he has misbehaved. So here, the plaintiffs within any reasonable time after the share of their mother had been ascertained, might have filed a bill for the removal of the trustee, ahd the appointment of a receiver in his stead, and for the security of their interests under the marriage articles ; but they were not compelled on pain of forfeiture to seek such preventive relief, and in reliance upon the fidelity of the trustee, and the sufficiency of his estate, might wait until they were entitled, to enjoyment. In Cooper vs. Day, although the neglect to record the trust deed, which was the ground^ of the trustee’s liability, had happened long before the suit, the question of the statute was not raised.
It is ordered and decreed, that the commissioner of this Court for Georgetown take an account of the estate of Edward Thomas, deceased, in the hands of his administrator, and report the extent of the assets applicable to the claims of the plaintiffs.
It is further ordered, that the representatives and distri-butee and the trustees of the distributee of Peter W. Eraser, deceased, account with the plaintiffs before the said commissioner for the share of Mary E. Thomas in the estate of her late husband, L. G. Walker, which ought to have been assured *247 to the said Eraser, as trustee under the marriage articles of Edward Thomas and wife; and that said commissioner report the account, distinguishing between principal and interest.
It is further ordered that the costs be paid from the estate of Peter W. Eraser, deceased.
It is finally ordered, that the Circuit decree be • affirmed except as herein modified, and that the appeal he dismissed.
Johnston, Dunkin and Dabgan, CC., concurred.

Decree modified.